Argued July 25, reversed and remanded October 10, reconsideration denied
October 10, petition for review denied November 7, 1978

In the Matter of the Marriage of
ALDERSON, *Petitioner-Appellant,*
*and*
ALDERSON, *Respondent-Respondent.*
(No. 73-36-E, CA 10809)
583 P2d 31

Ronald K. Cue, Ashland, argued the cause for petitioner-appellant. With him on the brief was Cottle, Howser & Hampton, Ashland.

Robert A. Boyer, Medford, argued the cause for respondent-respondent. With him on the brief was Boyer & Putney, Medford.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

This is an appeal from an order changing custody of an eight-year-old daughter and a seven-year-old son from the mother to the father. The issue is whether there was an adequate showing of changed circumstances to justify the order.

The parties were divorced in 1973. During the period of separation, and since the dissolution, both children have been in the custody of the mother. The mother has remarried and has had another son. The father has not remarried.

The mother's neighborhood consists of modest homes occupied by young families with children of early school age. The children have attended a neighborhood school. A teacher who had taught both children testified that they have been well-dressed and groomed, have no academic problems, have taken part in extra-curricular activities, and are emotionally and socially well-adjusted. The mother and stepfather have participated in school activities and in parent-teacher conferences. The girl has received a citizenship reward for her dependability and for being an outstanding student.

At the outset of the hearing, the father acknowledged that he had no concern about the way the children had been fed, cared for in matters of physical attention and clothing, or the cleanliness of the house.

The reasons given by the father for seeking a change of custody were that the daughter had been molested on two occasions, that the mother did not take appropriate action, and that the mother and her husband frequently smoked marijuana in the presence of the children.

The first of the incidents of molestation had taken place approximately a year before the hearing. No purpose would be served by reciting the facts. When the mother was told of the incident, she immediately warned neighbors about the situation, and she made

certain that the daughter had no further contact with the alleged perpetrator, who did not live in the neighborhood.

The second incident involved a near neighbor, one of the daughter's playmates and the daughter. The daughter testified in a rather confused manner that there had been two incidents involving the neighbor over a period of three or four months. She was not actually molested; rather, she observed one or more incidents involving the neighbor and the playmate.[1] The mother was not aware of any incident until shortly before the hearing. Then she immediately investigated that matter in the neighborhood and found that the alleged molester had recently committed suicide.

The mother and her husband admitted that they were frequent users of marijuana. The daughter testified that use was an almost daily occurrence; the adults said their use was social and limited to weekends. In any event, frequent use did take place, and it did take place in the presence of the children. The daughter complained that she did not like to watch the activity and that the smoke bothered her eyes and throat.

The daughter testified, but not the son. She expressed a desire to live with her father. She also revealed, as is undoubtedly commonly true in similar circumstances, that attractive promises had been made to her by her father and grandparents about things that would happen if she came to live with them. The mother does not work, and she and her mother are in the home on a full-time basis. The father is employed in a lumber mill and works most

---

[1]The trial judge, we believe, seriously misinterpreted the testimony of the mother's husband. He insisted that the girl had not been molested but had been subjected to observing one or more acts of molestation. The court took that as a denial by the husband that anything had happened. As we read the record, the husband did not deny that an act of molestation had taken place; he said that the girl had not herself in fact been molested and that the father's parents had exaggerated the story.

weekends. Although he maintains his own apartment, he spends a great deal of time at his parents' mobile home, where the children always resided during visitation periods and would reside if the father were given custody. The primary responsibility for the care of the children would fall upon the grandparents, which they made perfectly plain they were eager and willing to undertake.

The trial court found that the combination of the use of marijuana in the home, its transient physical effects on the child, and "a great deal of indifference on the part of the family * * * to the complaints of the child, particularly Mr. Blank [the mother's husband]" were sufficient "to tip the scale in favor of the father." He ordered that custody be changed to the father.

In *Niedert and Niedert,* 28 Or App 309, 313, 559 P2d 515, *rev den* (1977), we said:

> "The change-of-circumstance rule is designed to serve two functions: to discourage repeated litigation of the same issues and, more important, to provide young children with a stable environment. * * * We have long recognized the importance of a stable and secure home life and have consequently placed a high value on the stability of parental relationships. [Footnote omitted.] Therefore the rule requires a showing of some change in circumstances which makes either the benefits to be gained from a change of custody or the detriment caused by not making the change outweigh the damage done to a child who is exposed to shifting parental figures. * * *"

As in *Niedert,* the father here has failed to make such a showing. The evidence with respect to the acts of molestation, and the mother and her husband's reaction to those incidents, do not reveal indifference. The mother's warning other parents in the neighborhood and making certain that her child had no further contact with the first perpetrator, while perhaps not the same actions other parents might have taken, were appropriate and sufficient. The other incident, or incidents, involving the neighbor did not come to the

mother's attention in such a manner as to permit her to do anything; and in the circumstances the particular misconduct is most unlikely to be repeated. The husband's view of the neighbor's conduct, which we have pointed out above was misinterpreted by the trial judge, does not seem to us to have any substantial bearing on the dispute.

With respect to the marijuana smoking, we are not compelled to make a moral judgment. The only child to testify said that she did not like the conduct, that she did not think it proper, and that she was physically bothered by it. There was no testimony other than that of any effect on her, and there was absolutely no testimony concerning the effect on the boy. The mother and her husband have the ability to mold their future conduct more appropriately than they have, but we are not persuaded that the use of marijuana in this instance constituted a change of circumstances that would fairly permit the conclusion that benefit to the children by putting them into their grandparents' home would outweigh the potential damage by destroying what has been a stable existence for six years.

The trial court erred in changing custody of the children. The case is reversed for entry of an order denying the father's motion and for such further proceedings as may be appropriate in the circumstances.

Reversed and remanded. No costs to either party.